Mark E. Hellenkamp, SBN 144708
David M. Plouff, SBN 157026
CLARK HILL LLP
600 West Broadway, Suite 500
San Diego, California 92101
Telephone:  (619) 557-0404
Facsimile:  (619) 557-0460
Email:  mhellenkamp@clarkhill.com
Email:  dplouff@clarkhill.com

Attorneys for Plaintiff
MARKEL AMERICAN INSURANCE COMPANY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| MARKEL AMERICAN INSURANCE COMPANY, a Virginia corporation,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>THUNDERBOLT HOLDINGS, LLC fka New AMI, Inc. fka Associated Materials, Inc., a Delaware limited liability company; TOLL BROS, INC., a Pennsylvania Corporation; TOLL SOUTH LV, LLC, a Nevada limited liability company;<br><br>　　　　　Defendants. | Case No.<br><br>**COMPLAINT FOR DECLARATORY RELIEF; DEMAND FOR JURY TRIAL** |

Plaintiff, Markel American Insurance Company ("MAIC" or "plaintiff"), alleges:

/ / /

/ / /

/ / /

- 1 -
**COMPLAINT FOR DECLARATORY RELIEF**

**Jurisdiction and Venue**

1.     At all times mentioned herein, MAIC was and is a corporation organized and incorporated under the laws of the State of Virginia with its principal place of business in Glen Allen, Virginia and is a citizen of the State of Virginia.  MAIC is an admitted insurer in the State of California.

2.     On information and belief, plaintiff alleges that, at all relevant times herein mentioned, Thunderbolt Holdings, LLC, formerly known as New AMI, Inc., formerly known as Associated Materials, Inc., LLC dba Alpine/Alside Windows ("AM"), was and is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business in the State of Ohio.

3.     Plaintiff's counsel has reviewed the public information available from the Delaware Secretary of State's website in an effort to identify the members of AM, but member information is not available on the website.  A representative from the Delaware Secretary of State's office stated that membership information is not listed with the office.  Plaintiff's counsel has reviewed the public information available from the Ohio Secretary of State's website in an effort to identify the members of AM, but no listing for AM was found.  Plaintiff's counsel has also reviewed Westlaw's Public Records database to identify members of AM, but was unable to confirm the identity or citizenship of any individual or entity currently a member of AM, and none of the individuals identified in the database search appeared to be a current citizen of Virginia.  Accordingly, on information and belief, plaintiff alleges that at all relevant times herein mentioned, none of AM's members are citizens of Virginia.

4.     On information and belief, plaintiff alleges that, at all relevant times herein mentioned, Toll Bros, Inc. ("Toll Bros.") was and is a corporation organized and incorporated under the laws of the State of Pennsylvania with its principal place of business in the State of Pennsylvania and is a citizen of Pennsylvania.

**COMPLAINT FOR DECLARATORY RELIEF**

5.    On information and belief, plaintiff alleges that, at all relevant times herein mentioned, Toll South LV, LLC ("Toll South") was and is a limited liability company organized and existing under the laws of the State of Nevada with its principal place of business in Las Vegas, Nevada.

6.    Plaintiff's counsel has reviewed the public information available from the Nevada Secretary of State's website and Westlaw's Public Records database to identify the members of Toll South.  Based on the information obtained from those sources and on information and belief, plaintiff alleges that, at all relevant times herein mentioned, the members of Toll South are Gary M. Mayo ("Mayo"), Martin P. Connor ("Connor"), Michael J. Grubb ("Grubb"), Daniel L. Wright ("Wright"), Roberta M. Hogan ("Hogan"), Joseph R. DeSanto ("DeSanto"), Timothy J. Hoban ("Hoban"), Janet Love ("Love"), Tricia Hausler ("Hausler") and Robert Parahus ("Parahus").  Plaintiff further alleges that members Mayo, Wright, Hogan, and Love are citizens of Clark County, State of Nevada; members Connor, Grubb, Hoban and Parahus are citizens of the State of Pennsylvania; member DeSanto is a citizen of Washington, D.C.; and member Hausler is a citizen of Phoenix, County of Maricopa, State of Arizona.

7.    Defendants Toll Bros. and Toll South are joined as parties in this action because if they were to obtain a valid final judgment in the Underlying Action, discussed *infra*, against AM, they might seek to pursue recovery of any such judgment against MAIC.

8.    Jurisdiction exists under 28 U.S.C. §1332 and 28 U.S.C. §2201 because complete diversity of citizenship exists between MAIC and all of the defendants and because the matter in controversy, exclusive of costs, exceeds $75,000.

9.    Venue is proper under 28 U.S.C. §1391 in the Central District of California because, among other reasons, it is the judicial district in which the Underlying Action, discussed *infra*, is pending.

/ / /

**COMPLAINT FOR DECLARATORY RELIEF**

274501089.v1

**Allegations Common to All Claims for Relief**

10.     MAIC issued several commercial lines insurance policies to AM: (a) policy no. MKLM6MMP1000128 effective from December 1, 2019 to December 1, 2020 ("2019 Primary Policy"); (b) policy no. MKLM6MMP1000224 effective from December 1, 2020 to December 1, 2021 ("2020 Primary Policy") and (c) policy no. MKLM6MMP1000366 effective from December 1, 2021 to December 1, 2022 ("2021 Primary Policy").

11.     Each Primary Policy has Limits of Liability for commercial general liability coverage of:  $2 million - general aggregate limit (other than Products/Completed Operations); $2 million - products/completed operations aggregate limit; and $1 million each occurrence limit, and is subject to a $500,000 Self-Insured Retention.

12.     Each Primary Policy generally provides liability coverage subject to various terms, conditions, and exclusions, with respect to a "suit" that seeks "damages" for "bodily injury" or "property damage" caused by an "occurrence" if the "bodily injury" or "property damage" occurs "during the policy period" and if coverage is otherwise available.

13.     Each Primary Policy also contains written provisions in the Insuring Agreement that state that "property damage" does not fall within the grant of coverage if the insured had knowledge of it before the policy period began.  Each Primary Policy also contains written provisions in the Insuring Agreement that state that "property damage" will be deemed to have been known to have occurred at the earliest time when any insured (as described) reports all or any part of the "property damage" to MAIC or receives a written or verbal demand or claim for damages because of the "property damage" or becomes aware by any other means that "property damage" has occurred or begun to occur.

14.     Each Primary Policy also includes the following Exclusions and Definitions:

**COMPLAINT FOR DECLARATORY RELIEF**

274501089.v1

2.      **Exclusions**

This insurance does not apply to:

\* \* \*

a.      **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured .  .  .

\* \* \*

k.      **Damage to your product**

"Property damage" to "your product" arising out of it or any part of it.

\* \* \*

m.      **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1)      A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2)      A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your

- 5 -
**COMPLAINT FOR DECLARATORY RELIEF**

work" after it has been put to its intended use.

**n.     Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)**    "Your product";

**(2)**    "your work"; or

**(3)**    "Impaired property";

If such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

\* \* \*

**SECTION V – DEFINITIONS**

\* \* \*

8.     "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a.     It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b.     You have failed to fulfill the terms of a

- 6 -

**COMPLAINT FOR DECLARATORY RELIEF**

274501089.v1

contract or agreement;

If such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

\* \* \*

13.    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\* \* \*

17.    "Property damage" means:

a.    Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.    Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

\* \* \*

21.    "Your product":

a.    Means:

(1)    Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a)    You;

- 7 -
**COMPLAINT FOR DECLARATORY RELIEF**

            (b)    Others trading under your name; or

            (c)    A person or organization whose business or assets you have acquired; and

      (2)    Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    b.    Includes:

      (1)    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

      (2)    The providing of or failure to provide warnings or instructions.

    c.    Does not include vending machines or other property rented to or located for the use of others but not sold.

22.    "Your work":

    a.    Means:

      (1)    Work or operations performed by you or on your behalf; and

      (2)    Materials, parts or equipment furnished in connection with such work or operations.

    b.    Includes:

      (1)    Warranties or representations made at any time with respect to the fitness,

- 8 -

**COMPLAINT FOR DECLARATORY RELIEF**

quality, durability, performance or use
of "your work", and

(2)    The providing of or failure to provide
warnings or instructions.

\* \* \*

16.    MAIC also issued the following commercial umbrella liability policies to AM: (a) policy no. MKLM6MM70000154, for the period December 1, 2019 to December 1, 2020 (the "2019 Umbrella Policy"); (b) policy no. MKLM6MM70000261 for the period December 1, 2020 to December 1, 2021 ("2020 Umbrella Policy") and (c) policy no. MKLM6MM70000411 for the period December 1, 2021 to December 1, 2022 ("2021 Umbrella Policy").

17.    Each Umbrella Policy has a $15 million "each occurrence" limit and a $15 million aggregate limit and provides that MAIC will pay on behalf of the insured those sums in excess of the "retained limit" which the insured becomes legally obligated to pay as damages because of "property damage" to which the insurance applies, and as to which "occurs during the policy period."  The "retained limit" is either the underlying insurance and any other insurance, if applicable, or $10,000 for "each occurrence" if coverage under the underlying insurance or any other insurance does not apply.

18.    Each of the MAIC Umbrella Policies also contains written provisions in the Insuring Agreement that state, among other things, that "property damage" does not fall within the grant of coverage if the insured had knowledge of it before the inception of the policy period.  Each Umbrella Policy also contains written provisions in the Insuring Agreement that state that "property damage" will be deemed to have been known to have occurred at the earliest time when any insured (as described) reports all or any part of the "property damage" to MAIC or receives a written or verbal demand or claim for damages because of the "property damage" or becomes aware by any other means that "property damage" has occurred or begun to occur.

**COMPLAINT FOR DECLARATORY RELIEF**

19.   Each Umbrella Policy includes the following:

**SECTION III. EXCLUSIONS**

This insurance does not apply to:

\* \* \*

**5.   Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)**   A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)**   A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

\* \* \*

**7.   Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**8.   Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard"

**COMPLAINT FOR DECLARATORY RELIEF**

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

* * *

13.   **Expected or Intended Injury**

"Bodily injury", "property damage"  . . . expected or intended from the standpoint of the insured.  . . .

* * *

19.   **Recall of Products, Work or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

a.   "Your product";

b.   "Your work"; or

c.   "Impaired property"

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy, or dangerous condition in it.

**SECTION V. DEFINITIONS**

* * *

8.   "Impaired property" means tangible property, other than "your product" or "your work" that cannot be used or is less useful because:

**COMPLAINT FOR DECLARATORY RELIEF**

274501089.v1

     **a.**    It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

     **b.**    You have failed to fulfill the terms of a contract or agreement;

     If such property can be restored to use by:

        **a.**    **T**he repair, replacement, adjustment or removal of "your product" or "your work"; or

        **b.**    your fulfilling the terms of the contract or agreement.

\* \* \*

13.    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\* \* \*

**17.**    "Property damage" means:

    a.    Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b.    Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

\* \* \*

**23.**    "Your product":

- 12 -

**COMPLAINT FOR DECLARATORY RELIEF**

**a.**    Means:

    **(1)**    Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

        **(a)**    You;

        **(b)**    Others trading under your name; or

        **(c)**    A person or organization whose business or assets you have acquired; and

    **(2)**    Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.**    Includes:

    **(1)**    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

    **(2)**    The providing of or failure to provide warnings or instructions.

**c.**    Does not include vending machines or other property rented to or located for the use of others but not sold.

**24.**    "Your work":

**a.**    Means:

    **(1)**    Work or operations performed by you or on your behalf; and

- 13 -

**COMPLAINT FOR DECLARATORY RELIEF**

       **(2)**    Materials, parts or equipment furnished in connection with such work or operations.

   **b.**    Includes:

       **(1)**    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

       **(2)**    The providing of or failure to provide warnings or instructions.

* * *

20.    On or about November 24, 2021, AM notified MAIC in writing that Toll Bros. and/or Toll South (collectively "Toll") had presented a claim for damages against AM in a phone call on October 29, 2021. According to the notice, Toll was alleging that certain windows and patio doors manufactured by AM, which had been sold to Toll and installed at homes being constructed by Toll in the Mesa Ridge development in Las Vegas, Nevada, were defectively designed and manufactured and caused the products to fail and cause damage to property.

21.    On or about May 24, 2022, Toll filed a complaint in the action entitled *Toll Bros., Inc. et al. v. Associated Materials, LLC d/b/a Alpine/Alside Windows*, Orange County Superior Court Case No. 30-2022-01261050-Cu-BC-CJC. The parties to that case subsequently stipulated to stay the case to pursue binding arbitration, which is currently pending as *Toll Bros., Inc. et al. v. Associated Materials, LLC d/b/a Alpine/Alside Windows*, JAMS Arbitration no. 1200060364, in Irvine, California (Hon. Gail Andler, Ret.). The parties to that case also stipulated to the Superior Court's retention of jurisdiction to enter judgment in accordance with the arbitration award. The Superior Court proceeding and binding arbitration are hereafter referred to as the "Underlying Action."

- 14 -

**COMPLAINT FOR DECLARATORY RELIEF**

22.     The Underlying Action alleges that Toll and AM are parties to an Exclusive Use Agreement pursuant to which Toll granted AM certain exclusive rights to supply windows and patio doors designed and manufactured by AM to homes built by Toll in California, Nevada and other western states.  In numerous respects, the Exclusive Use Agreement contemplates the parties' performance in California, Nevada and other western states.

23.     The Underlying Action alleges that the window products had been sold to Toll and installed at homes being constructed by Toll in the Mesa Ridge development and failed due to defective design and/or manufacture, causing damage to property.  The Underlying Action also alleges that window products supplied by AM which had replaced some of the initially failing products also failed and caused damage to property.

24.     MAIC agreed to and did monitor AM's defense of the Underlying Action subject to a reservation of rights pending AM's satisfaction of the applicable self-insured retention ("SIR").

25.     On April 5, 2023, arbitrator Hon. Gail Andler, Ret., issued a "Report of Preliminary Hearing and Scheduling Order No. 1" ("Order") in the Underlying Action, which stated in part that the substantive law applicable to the Arbitration is the law of California.

26.     On April 7, 2023, pursuant to Judge Andler's Order, Toll amended its arbitration demand to include additional facts, which it set forth in the form of an Amended Complaint in the Underlying Action.

27.     On May 30, 2023, AM advised MAIC that it was selecting the 2020 MAIC Primary and 2020 MAIC Umbrella Policies for coverage for the Underlying Action and that it had satisfied the 2020 MAIC Primary Policy SIR.  Upon such notification, MAIC exercised its right to defend and has been defending the Underlying Action since that time.

/ / /

**COMPLAINT FOR DECLARATORY RELIEF**

274501089.v1

28.     In the Underlying Action, Toll alleges numerous categories of damages against AM, including, among other things, the cost of replacement windows; the cost of installing replacement windows; storage costs for window products that AM would not let Toll return; delay damages and carrying costs for homes in production; reduced purchase prices for homes; costs incurred to defend and resolve homeowner claims; expert and investigative fees; unreimbursed damages incurred by homeowners in conjunction with the settlement of homeowner claims; attorneys' fees; punitive damages; and damage to Toll's reputation.

**FIRST CLAIM FOR RELIEF**

**DECLARATORY RELIEF – DUTY TO INDEMNIFY**

**RE "OCCURRENCE" REQUIREMENT**

**(AGAINST ALL DEFENDANTS)**

29.     MAIC realleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 28 as if set forth in full as part of the First Claim for Relief.

30.     Subject to other terms, limitations, exclusions and conditions, and as set forth verbatim above, the MAIC Primary and Umbrella Policies provide coverage for "property damage" only if it is caused by an "occurrence."

31.     MAIC contends, among other things, that various categories of damages claimed by Toll in the Underlying Action do not satisfy the definition of "occurrence" under the MAIC Policies.  For example, the supply of window products that are allegedly unsuitable for a particular project is not an "accident, including continuous or repeated exposure to substantially the same general harmful conditions" within the meaning of the Policies.

32.     On information and belief, MAIC alleges that AM contends that all of the categories of damages claimed by Toll in the Underlying Action were caused by an "occurrence" and that coverage is available accordingly.

**COMPLAINT FOR DECLARATORY RELIEF**

274501089.v1

33.    An actual controversy has arisen and now exists between MAIC on the one hand, and AM on the other, regarding the above.

34.    Accordingly, MAIC seeks a declaration from the Court that it owes no duty to indemnify AM under the MAIC Policies with respect to each of the categories of damages claimed by Toll against AM in the Underlying Action that were not caused by an "occurrence."

**SECOND CLAIM FOR RELIEF**

**DECLARATORY RELIEF – DUTY TO INDEMNIFY**

**RE "PROPERTY DAMAGE"**

**(AGAINST ALL DEFENDANTS)**

35.    MAIC realleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 34 as if set forth in full as part of the Second Claim for Relief.

36.    Subject to other terms, limitations, exclusions and conditions, and as set forth verbatim above, the MAIC Policies provide, in part, that MAIC will pay on behalf of the insured those sums the insured becomes legally obligated to pay as damages because of "property damage" to which the insurance applies.

37.    MAIC contends, among other things, that numerous categories of damages claimed by Toll in the Underlying Action do not satisfy the definition of "property damage" under the Policies and therefore MAIC has no duty to indemnify AM for each of such categories of claimed damages.  For example, the failure of the insured's own products does not constitute "property damage" within the meaning of the Policies.

38.    On information and belief, MAIC alleges that AM contends that all of the categories of damages claimed by Toll in the Underlying Action satisfy the definition of "property damage" under the MAIC policies and therefore that MAIC owes a duty to indemnify for all such damages.

**COMPLAINT FOR DECLARATORY RELIEF**

274501089.v1

39.     An actual controversy has arisen and now exists between MAIC on the one hand, and AM on the other, regarding whether each of the numerous categories of damages claimed by Toll in the Underlying Action satisfy the definition of "property damage" under the policies.

40.     Accordingly, MAIC seeks a declaration from the Court that it owes no duty to indemnify AM under the MAIC Policies with respect to each of the categories of damages claimed by Toll against AM in the Underlying Action that do not satisfy the definition of "property damage".

**THIRD CLAIM FOR RELIEF**

**DECLARATORY RELIEF – DUTY TO INDEMNIFY**

**RE "DURING THE POLICY PERIOD"**

**(AGAINST ALL DEFENDANTS)**

41.     MAIC realleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 40 as if set forth in full as part of the Third Claim for Relief.

42.     Subject to other terms, limitations, exclusions and conditions, and as set forth verbatim above, the MAIC Policies provide, in part, that MAIC will pay on behalf of the insured those sums the insured becomes legally obligated to pay as damages because of "property damage" if the "property damage" takes place "during the policy period."

43.     MAIC contends, among other things, that numerous categories of damages claimed by Toll in the Underlying Action are not covered because the purported "property damage" did not take place "during the policy period."  For example, numerous of the Mesa Ridge homes for which Toll seeks damages were not built until after the policy period of the 2020 MAIC Primary and Umbrella Policies, and numerous of the Mesa Ridge homes for which Toll seeks damages based on allegedly unsuitable replacement windows did not receive replacement windows until after the policy period of the 2020 MAIC Primary and Umbrella Policies.

**COMPLAINT FOR DECLARATORY RELIEF**

274501089.v1

Accordingly, MAIC has no duty to indemnify AM for any damages because of "property damage" that did not take place during any of the MAIC Policies' policy periods.

44.     On information and belief, MAIC alleges that AM contends that all of the categories of damages claimed by Toll in the Underlying Action satisfy the "property damage" "during the policy period" requirement and therefore that MAIC owes a duty to indemnify for all such damages.

45.     An actual controversy has arisen and now exists between MAIC on the one hand, and AM on the other, regarding whether each of the numerous categories of damages claimed by Toll in the Underlying Action satisfy the "property damage" "during the policy period" requirement under the MAIC Policies.

46.     Accordingly, MAIC seeks a declaration from the Court that it owes no duty to indemnify AM under the MAIC Policies with respect to each of the categories of damages claimed by Toll in the Underlying Action that do not satisfy the "property damage" "during the policy period" requirement.

## FOURTH CLAIM FOR RELIEF

## DECLARATORY RELIEF – DUTY TO INDEMNIFY RE "PROPERTY DAMAGE" KNOWN BEFORE POLICY PERIOD
## (AGAINST ALL DEFENDANTS)

47.     MAIC realleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 46 as if set forth in full as part of the Fourth Claim for Relief.

48.     Subject to other terms, limitations, exclusions and conditions, the MAIC Policies' Insuring Agreements provide, in part, that "property damage" does not fall within the grant of coverage if the insured had knowledge of it before the inception of the policy period. Each MAIC Policy also contains written provisions in the Insuring Agreement that state that "property damage" will be deemed to have been known to have occurred at the earliest time when any insured (as described) reports all or any

**COMPLAINT FOR DECLARATORY RELIEF**

part of the "property damage" to MAIC or receives a written or verbal demand or claim for damages because of the "property damage" or becomes aware by any other means that "property damage" has occurred or begun to occur.

49.     MAIC contends, among other things, that no coverage is available for various categories of damages claimed by Toll in the Underlying Action because the insured knew about the "property damage" upon which the allegations are based, including because the insured reported all or any part of the "property damage" to MAIC or received a written or verbal demand or claim for damages because of the "property damage" or became aware by any other means that "property damage" had occurred or begun to occur, prior to the inception of the Policies.  For example, AM received a pre-lawsuit verbal and/or written demand from Toll in October 2021 and provided written notice to MAIC of the claim in November 2021.

50.     On information and belief, MAIC alleges that AM contends that it did not have knowledge of the "property damage" prior to the inception of the Policies and that the Insuring Agreement provisions noted above do not foreclose coverage for all of the categories of damages claimed by Toll in the Underlying Action.

51.     An actual controversy has arisen and now exists between MAIC on the one hand, and AM on the other, regarding the above.

52.     Accordingly, MAIC seeks a declaration from the Court that it owes no duty to indemnify AM under the MAIC Policies with respect to each of the categories of damages claimed by Toll against AM in the Underlying Action that are foreclosed by the Insuring Agreement provisions stated above.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**COMPLAINT FOR DECLARATORY RELIEF**

274501089.v1

## FIFTH CLAIM FOR RELIEF

### DECLARATORY RELIEF – DUTY TO INDEMNIFY

### RE PRODUCT EXCLUSION

### (AGAINST ALL DEFENDANTS)

53.     MAIC realleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 52 as if set forth in full as part of the Fifth Claim for Relief.

54.     Subject to other terms, limitations, exclusions and conditions, and as set forth verbatim above, the MAIC Policies contain a "Damage to Your Product" Exclusion ("Product Exclusion") which provides that the insurance does not apply to "'property damage' to 'your product' arising out of it or any part of it."

55.     MAIC contends, among other things, that numerous categories of damages claimed by Toll in the Underlying Action fall within the Product Exclusion and therefore that MAIC has no duty to indemnify AM for each of such categories of damages.

56.     On information and belief, MAIC alleges that AM contends that none of the categories of damages claimed by Toll in the Underlying Action fall within the Product Exclusion under the policies and therefore that MAIC owes a duty to indemnify for all such damages.

57.     An actual controversy has arisen and now exists between MAIC on the one hand, and AM on the other, regarding whether each of the numerous categories of damages claimed by Toll in the Underlying Action fall within the Product Exclusion of the MAIC Policies.

58.     Accordingly, MAIC seeks a declaration from the Court that it owes no duty to indemnify AM under the MAIC Policies with respect to each of the categories of damages claimed by Toll against AM in the Underlying Action that fall within the Product Exclusion.

/ / /

**COMPLAINT FOR DECLARATORY RELIEF**

274501089.v1

**SIXTH CLAIM FOR RELIEF**

**DECLARATORY RELIEF – DUTY TO INDEMNIFY**

**RE IMPAIRED PROPERTY EXCLUSION**

**(AGAINST ALL DEFENDANTS)**

59.     MAIC realleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 58 as if set forth in full as part of the Sixth Claim for Relief.

60.     Subject to other terms, limitations, exclusions and conditions, and as set forth verbatim above, the MAIC Policies contain a "Damage to Impaired Property or Property Not Physically Injured" Exclusion ("Impaired Property Exclusion") which generally provides that the insurance does not apply to "property damage" to "impaired property or property that has not been physically injured arising out of a defect, deficiency, inadequacy or dangerous condition of the insured's product or work."

61.     MAIC contends, among other things, that numerous categories of damages claimed by Toll in the Underlying Action fall within the Impaired Property Exclusion of the MAIC Policies and therefore that MAIC has no duty to indemnify AM for each of such categories of damages.

62.     On information and belief, MAIC alleges that AM contends that none of the categories of damages claimed by Toll in the Underlying Action fall within the Impaired Property Exclusion of the MAIC Policies and therefore that MAIC owes a duty to indemnify for all such damages.

63.     An actual controversy has arisen and now exists between MAIC on the one hand, and AM on the other, regarding whether each of the numerous categories of damages claimed by Toll in the Underlying Action fall within the Impaired Property Exclusion of the MAIC Policies.

64.     Accordingly, MAIC seeks a declaration from the Court that it owes no duty to indemnify AM under the MAIC Policies with respect to each of the categories

**COMPLAINT FOR DECLARATORY RELIEF**

of damages claimed by Toll against AM in the Underlying Action that fall within the Impaired Property Exclusion.

### SEVENTH CLAIM FOR RELIEF

**DECLARATORY RELIEF – DUTY TO INDEMNIFY**

**RE WORK EXCLUSION**

**(AGAINST ALL DEFENDANTS)**

65.     MAIC realleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 64 as if set forth in full as part of the Seventh Claim for Relief.

66.     Subject to other terms, limitations, exclusions and conditions, and as set forth verbatim above, the MAIC Policies contain a "Damage to Your Work" Exclusion ("Work Exclusion") which generally provides that the insurance does not apply to "'property damage' to 'your work' arising out of it or any part of it" but the exclusion does not apply "if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor."

67.     MAIC contends, among other things, that numerous categories of damages claimed by Toll in the Underlying Action fall within the Work Exclusion and therefore that MAIC has no duty to indemnify AM for each of such categories of damages.

68.     On information and belief, MAIC alleges that AM contends that none of the categories of damages claimed by Toll in the Underlying Action fall within the Work Exclusion under the MAIC Policies and therefore that MAIC owes a duty to indemnify for all such damages.

69.     An actual controversy has arisen and now exists between MAIC on the one hand, and AM on the other, regarding whether each of the numerous categories of damages claimed by Toll in the Underlying Action fall within the Work Exclusion of the MAIC Policies.

**COMPLAINT FOR DECLARATORY RELIEF**

274501089.v1

70. Accordingly, MAIC seeks a declaration from the Court that it owes no duty to indemnify AM under the MAIC Policies with respect to each of the categories of damages claimed by Toll against AM in the Underlying Action that fall within the Work Exclusion.

## EIGHTH CLAIM FOR RELIEF
## DECLARATORY RELIEF – DUTY TO INDEMNIFY
## RE RECALL EXCLUSION
## (AGAINST ALL DEFENDANTS)

71. MAIC realleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 70 as if set forth in full as part of the Eighth Claim for Relief.

72. Subject to other terms, limitations, exclusions and conditions, and as set forth verbatim above, the MAIC Policies contain a "Recall of Products, Work or Impaired Property" Exclusion ("Recall Exclusion") which generally provides that the insurance does not apply to damages for any loss or expense incurred by the insured for the loss of use, withdrawal, repair/replacement, removal or disposal of the insured's product, work, or impaired property if such product, work or property is withdrawn or recalled from the market or from use because of a known/suspected defect, deficiency, inadequacy or dangerous condition in it.

73. MAIC contends, among other things, that numerous categories of damages claimed by Toll in the Underlying Action fall within the Recall Exclusion and therefore that MAIC has no duty to indemnify AM for each of such categories of damages.

74. On information and belief, MAIC alleges that AM contends that none of the categories of damages claimed by Toll in the Underlying Action fall within the Recall Exclusion under the MAIC Policies and therefore that MAIC owes a duty to indemnify for all such damages.

**COMPLAINT FOR DECLARATORY RELIEF**
274501089.v1

75.    An actual controversy has arisen and now exists between MAIC on the one hand, and AM on the other, regarding whether each of the numerous categories of damages claimed by Toll in the Underlying Action fall within the Recall Exclusion of the MAIC Policies.

76.    Accordingly, MAIC seeks a declaration from the Court that it owes no duty to indemnify AM under the MAIC Policies for each of the categories of damages claimed by Toll against AM in the Underlying Action that fall within the Recall Exclusion.

## NINTH CLAIM FOR RELIEF

### DECLARATORY RELIEF – DUTY TO INDEMNIFY
### RE INTENTIONAL MISCONDUCT
### (AGAINST ALL DEFENDANTS)

77.    MAIC realleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 76 as if set forth in full as part of the Ninth Claim for Relief.

78.    Subject to other terms, limitations, exclusions and conditions, and as set forth verbatim above, the MAIC Policies exclude Expected Or Intended "property damage".  Additionally, intentional misconduct is uninsurable under applicable state law.

79.    MAIC contends, among other things, that various categories of damages claimed by Toll in the Underlying Action, including two fraud-based causes of action against AM, are excluded by the Expected or Intended Exclusion and/or are uninsurable under applicable state law.

80.    On information and belief, MAIC alleges that AM contends that coverage is available under the MAIC Policies for all of the categories of damages claimed by Toll in the Underlying Action and that coverage is not barred for any of them by the Expected or Intended Exclusion or by applicable state law rendering coverage unavailable for intentional misconduct.

**COMPLAINT FOR DECLARATORY RELIEF**

274501089.v1

81.     An actual controversy has arisen and now exists between MAIC on the one hand, and AM on the other, regarding the above.

82.     Accordingly, MAIC seeks a declaration from the Court that it owes no duty to indemnify AM under the MAIC Policies with respect to each of the categories of damages claimed by Toll against AM in the Underlying Action that fall within the Expected Or Intended Exclusion and/or are subject to applicable state law forbidding insurance coverage for intentional misconduct.

## PRAYER FOR RELIEF

WHEREFORE, MAIC prays for judgment as follows:

1. On the First Claim for Relief, for a declaration that MAIC owes no duty to indemnify AM with respect to each of the categories of damages claimed by Toll in the Underlying Action that do satisfy the MAIC Policies' definition of "occurrence".

2. On the Second Claim for Relief, for a declaration that MAIC owes no duty to indemnify AM with respect to each of the categories of damages claimed by Toll in the Underlying Action that do not satisfy the MAIC Policies' definition of "property damage".

3. On the Third Claim for Relief, for a declaration that MAIC owes no duty to indemnify AM with respect to each of the categories of damages claimed by Toll in the Underlying Action that do not satisfy the MAIC Policies' "property damage" "during the policy period" requirement.

4. On the Fourth Claim for Relief, for a declaration that MAIC owes no duty to indemnify AM with respect to each of the categories of damages claimed by Toll in the Underlying Action that do not trigger coverage under the MAIC Policies because of the insured's pre-policy knowledge of "property damage".

5. On the Fifth Claim for Relief, for a declaration that MAIC owes no duty to indemnify AM with respect to each of the categories of damages claimed by

**COMPLAINT FOR DECLARATORY RELIEF**

Toll in the Underlying Action that fall within the MAIC Policies' Product Exclusion.

6. On the Sixth Claim for Relief, for a declaration that MAIC owes no duty to indemnify AM with respect to each of the categories of damages claimed by Toll in the Underlying Action that fall within the MAIC Policies' Impaired Property Exclusion.

7. On the Seventh Claim for Relief, for a declaration that MAIC owes no duty to indemnify AM with respect to each of the categories of damages claimed by Toll in the Underlying Action that fall within the MAIC Policies' Work Exclusion.

8. On the Eighth Claim for Relief, for a declaration that MAIC owes no duty to indemnify AM with respect to each of the categories of damages claimed by Toll in the Underlying Action that fall within the MAIC Policies' Recall Exclusion.

9. On the Ninth Claim for Relief, for a declaration that MAIC owes no duty to indemnify AM with respect to each of the categories of damages claimed by Toll in the Underlying Action that fall within the MAIC Policies' Expected Or Intended Exclusion or otherwise are barred by state law that forbids insurance coverage for intentional misconduct.

10. For costs of suit.

11. For such other relief as would be just and proper.

Dated:  November 20, 2023                    CLARK HILL LLP

                                     By:    /s/ Mark E. Hellenkamp
                                            Mark E. Hellenkamp
                                            Attorneys for Plaintiff
                                            MARKEL AMERICAN INSURANCE
                                            COMPANY

- 27 -
**COMPLAINT FOR DECLARATORY RELIEF**

1

## DEMAND FOR JURY TRIAL

2

Plaintiff demands a jury trial on all triable issues.

3

4

Dated: November 20, 2023

CLARK HILL LLP

5

By:   /s/ Mark E. Hellenkamp

6

Mark E. Hellenkamp

7

Attorneys for Plaintiff
MARKEL AMERICAN INSURANCE

8

COMPANY

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 28 -

**COMPLAINT FOR DECLARATORY RELIEF**